BLUM | COLLINS LLP
    Steven A. Blum (Bar No. 133208)
    Craig M. Collins (Bar No. 151582)
    Douglas L. Thorpe (Bar No. 43749)
    Teresa A. Blasberg (Bar No. 105473)
707 Wilshire Blvd., 48th Floor
Los Angeles, California 90017
Telephone:  213.572.0400
Facsimile:  213.572.0401
blum@blumcollins.com; collins@blumcollins.com;
dthorpe@thorpelink.com; tablasberg@earthlink.net

Attorneys for Plaintiffs

## UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>HELLER EHRMAN, LLP,<br><br>              Debtor, | Case No.  08-32514<br>Chapter 11<br><br>**ADVERSARY PROCEEDING**<br>**Ad. Pro. Case No.  09-ap-03058** |
| DEBORA K. BIGGERS, CARL GOODMAN, ANNA SCARPA, and MARJORIE NORRIS, individually, on behalf of all others similarly situated, and on behalf of the general public,<br><br>              Plaintiffs,<br><br>     vs.<br><br><br>HELLER EHRMAN, LLP,<br><br>              Debtor. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR (1) CLASS CERTIFICATION; AND (2) RELIEF FROM STIPULATED STAY**<br><br>*[Filed concurrently with Notice of Motion and Motion for Class Certification and Declarations of Debora K. Biggers, Carl Goodman, Anna Scarpa, Marjorie Norris, Steven A. Blum and Craig M. Collins]*<br><br><br>Date:    October 20, 2009<br>Time:    1:30 p.m.<br>Judge:  Honorable Dennis Montali |

Memo of Points and Authorities in support of Plaintiffs' Motion for Class Certification Relief from Stipulated Stay (09-ap-03058)

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

PROCEDURAL HISTORY ......................................................................................................... 2

THE NEED FOR CLASS CERTIFICATION NOW ................................................................. 3

WARN ACT CLAIMS ARE ESPECIALLY APPROPRIATE FOR CLASS
CERTIFICATION ....................................................................................................................... 4

THE PROPOSED CLASSES ...................................................................................................... 6

A CLASS ACTION ADVERSARY PROCEEDING IS PREFERABLE TO THE
BANKRUPTCY CLAIMS PROCEDURE .................................................................................. 7

THE PROPOSED CLASSES SATISFY RULE 23 .................................................................... 9
    A. The Proposed Classes Satisfy Each of the Four Prerequisites in Rule 23(a)........................ 9
        1. The Numerosity Requirement Is Satisfied ................................................................ 10
        2. Questions of Law and Fact Are Common to All Class Members ......................... 10
        3. The Claims of the Representatives Are Typical of the Claims of the Other Class
        Members ................................................................................................................... 12
        4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Classes ........... 12
    B. The Proposed Classes Meet the Requirements of Rule 23(b)(1) and (b)(3) ....................... 15
    C. The Standard for Class Certification .................................................................................. 16

THE STAY ON THIS ACTION SHOULD BE LIFTED. ......................................................... 17

CONCLUSION .......................................................................................................................... 18

INDEX OF EXHIBITS ............................................................................................................. 19

Case: 09-03058    Doc# 19    Filed: 09/22/09    Entered: 09/22/09 15:55:02    Page 2 of 20

Memo of Points and Authorities in Support of Plaintiffs' Motion for Class Certification, Relief from Stipulated
Stay (09-ap-03058)

# TABLE OF AUTHORITIES

**CASES**

Amchem Prods v. Windsor, 521 U.S. 591 (1997). .................................................................. 13

Baffa v. Donaldson, Luftkin & Jenrette Sec. Corp. 222 F.3d 52 (2d Cir. 2002) .................. 17

Birting Fisheries v. Lane, 92 F.3d 939, 939 (9th Cir. 1996) ................................................... 7

Bledsoe v. Emery Worldwide Airlines, 258 F. Supp. 2d 780 (S.D. Ohio 2003) ...................... 6

Cashman v. Dolce International/Hartford, Inc., 225 F.R.D. 73 (D. Conn. 2004) .................... 6

Coggin v. Sears, Roebuck and Company, 155 B.R. 934 (E.D.N.C.1993) ............................ 10

Cruz v. Robert Abbey, Inc., 778 F. Supp. 605 (E.D.N.Y. 1991). ........................................... 6

Cypress v. Newport News General & Nonsectarian Hospital Ass'n,
    375 F.2d 648 (4th Cir. 1967). ........................................................................................ 10

Dura-Bilt Corp. v. Chase Manhattan Corp., 89 F.R.D. 87 (S.D.N.Y. 1981). ....................... 12

Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968) ................................................. 14

Eisen v. Carlisle & Jacquelin, 417 U.S. 156 (1974) ............................................................. 17

Eisenberg v. Gagnon, 766 F.2d 770, 785 (3d Cir.), cert. denied, 474 U.S. 946,
    106 S. Ct. 342, 88 L. Ed. 2d 290, 106 S. Ct. 343 (1985) ............................................... 9

Finnan v. L.F. Rothschild & Co., 726 F. Supp. 460 (S.D.N.Y. 1989) .................................... 5

Garfinkel v. Memory Metals, Inc., 695 F. Supp. 1397 (D.Conn. 1988) ............................... 17

General Tel. Co. v. Falcon, 457 U.S. 147 (1982) ................................................................ 11

Grimmer v. Lord, Day & Lord, 937 F. Supp. 255 (S.D.N.Y. 1996) ........................................ 5

Hollowell v. Orleans Reg'l Hosp. LLC, 217 F.3d 379 [5th Cir. La. 2000] ............................. 5

In re Agent Orange Prod. Liab. Litig., 800 F.2d 14 (2nd Cir. 1986). .................................. 13

In re Charter Co., 876 F.2d 866 [11th Cir. Fla. 1989] .......................................................... 8

In re Visa Check Master Money Antitrust Litig, v. Visa, U.S. 280 F.3d 124 (2d Cir. 2001) ........... 17

Johnson v. First NLC Fin. Servs., LLC (In re First NLC Fin. Servs., LLC), 2008 Bankr. LEXIS 2166
    [Bankr. S.D. Fla. Aug. 11, 2008] ................................................................................. 7

Jones v. Kayser-Roth Hosiery, 748 F. Supp. 1276 (E.D. Tenn. 1990); ................................ 6

Jurcev v. Central Community Hospital, 7 F.3d 618 (7th Cir. 1993) ...................................... 6

Marisol A. v. Guiliani, 126 F.3d 372 (2d Cir. 1997) ............................................................ 17

Metro-North Commuter R.R., 191 F.3d 283 (2d Cir. 1999) ................................................ 17

New Orleans Clerks and Checkers Union Local 1497 v. Ryan-Walsh, Inc.,
    1994 U.S. Dist. LEXIS 2403 (E.D. La. 1994) ................................................................. 5

Quintero v. Mulberry Thai Silk, Inc., 2008 U.S. Dist. LEXIS 84976 (N.D. Cal. 2008) .......... 6

Reyes v. Greater Texas Finishing Corp., 19 F. Supp. 2d 709 (W.D. Tex. 1998). ................ 6

Shelter Realty Corp. v. Allied Maintenance Corp., 574 F.2d 656 (2d Cir. 1978) ................ 17

Visa Check Litigation, 192 F.R.D. 68 (E.D.N.Y. 2000), ...................................................... 17

**STATUTES**

11 U.S.C. § 507(a)(4). ........................................................................................................ 9

29 U.S.C. § 2101 ........................................................................................................... 1, 6

29 U.S.C. § 2102 ........................................................................................................... 5, 6

29 U.S.C. § 2104 ............................................................................................................... 5

Cal. Labor Code § 1400 ..................................................................................................... 1

ii

Memo. of Points and Authorities in Support of Plaintiffs' Motion for Class Certification, Relief from Stipulated Stay (09-ap-03058)

Case: 09-03058    Doc# 19    Filed: 09/22/09    Entered: 09/22/09 15:53:02    Page 3 of 27

**RULES**

Federal Rule of Bankruptcy Procedure 7023 ................................................................. 7

Federal Rule of Bankruptcy Procedure 9014 ................................................................. 7

Fed. R. Civ. P. 23 .......................................................................................... passim

**TREATISES**

1 NEWBERG ON CLASS ACTIONS, § 3:4 (4th ed. 2002) ................................................ 10

1 NEWBERG ON CLASS ACTIONS, § 3:5 (4th ed. 2002) ................................................ 10

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

During the 30-day period starting October 10, 2008, Debtor Heller Ehrman LLP terminated without cause the employment of Plaintiffs and hundreds of other employees at its several facilities. Debtor did not provide its employees with 60 days' advance written notice of their terminations.

On December 28, 2008, Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code. Plaintiffs, on behalf of themselves and the proposed class members, filed a class proof of claim on March 27, 2009, which was amended April 3, 2009 [Claim No. 306],[1] and then filed a Class Action Adversary Proceeding Complaint against Debtor on April 3, 2009. Plaintiffs seek recovery of damages of 60 days' wages and fringe benefits by reason of Debtor's failure to provide the notification required by the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act") and the California Relocations, Terminations and Mass Layoffs Act, Cal. Labor Code § 1400 *et seq.* (the "California WARN Act"). They also seek recovery of payments for other compensation including accrued but unused vacation time, statutory "waiting time" wages, and other damages and penalties for Debtor's violations of state labor laws.

By this Motion, Plaintiffs now ask the Court to certify the class of more than 500 former employees who are owed wages and other benefits, and to appoint class representatives and class counsel. Due to recent events in August and September of this year, it is imperative that the employees be empowered to act collectively in negotiating a settlement of their claims now with the Debtor and Unsecured Creditors Committee, or if settlement is impossible, then in trying the legal issues that impede a global settlement on a single, efficient, collective basis.

Plaintiffs seek leave to file this motion despite the parties' stipulated stay on this litigation (which expired October 5, 2009). See Docket No. 14. Events in the case mandate that

---

[1]     The Debtor has made no objection to this class proof of claim.

Case: 09-03058   Doc #: 19   Filed: 09/22/09   Entered: 09/22/09 15:51:52   Page 5 of 20
Memo of Points and Authorities in Support of Plaintiffs' Motion for Class Certification, Relief from Stipulated Stay (09-ap-03058)

the former employees come together as a certified class now.  On August 27, 2009 Defendant Heller Ehrman made a settlement offer to the proposed class of plaintiffs.  (See Exh. A hereto.)  The offer is expressly made subject to the condition that "…95% of all Biggers purported class members [must] agree to the settlement…."  The only effective way for the Plaintiffs and their counsel to negotiate settlement and resolve this case is for the Plaintiffs to be designated as class representatives entitled to act on behalf of the entire class.  Absent class certification, it would be difficult or impossible for the Plaintiffs to communicate with, and gather consent from, 95 percent of the more than 500 potential class members for *any* settlement.  Class certification will provide an efficient means for the classes of employees to act collectively.  The class action procedure is precisely designed for situations such as this one in which a large group of similarly situated claimants can most efficiently act collectively to resolve common issues.

## PROCEDURAL HISTORY

Before the Debtor sought the protection of the bankruptcy laws by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code on December 28, 2008, the Plaintiffs (other than Plaintiff Biggers) had already commenced an action asserting similar claims in United States District Court for the Northern District of California titled *Werth et al v. Heller, Ehrman, White & McAuliffe LLP*, Case No. CV-08-4799-CW.  The Plaintiffs initially filed the *Werth* action on October 20, 2008.  In the *Werth* action, the Plaintiffs assert similar claims to those in this adversary action, including requesting classwide relief on behalf of the putative class of former employees.  The *Werth* complaint named the Debtor in this action by the Debtor's former name "Heller, Ehrman, White & MacAuliffe LLP."

Before the *Werth* plaintiffs could seek class certification in that action, the Debtor filed its Chapter 11 petition.  This had the effect of staying the *Werth* action.

Although the *Werth* action was initially filed on behalf of the Plaintiffs by other attorneys, the Plaintiffs in that action later substituted in as replacement counsel the same lawyers who now represent the Plaintiffs (and the proposed class) in this Adversary Proceeding.  Thus, the plaintiffs in the *Werth* action and the Plaintiffs in this adversary action are represented

Case: 09-03058   Doc# 19   Filed: 09/22/09   Entered: 09/22/09 15:15:21   Page 6 of 20

Memo. of Points and Authorities ISO Opp. of Plaintiffs' Motion for Class Certification, Relief from Stipulated Stay (09-ap-03058)

by the same lawyers. However, on May 19, 2009, the *Werth* Plaintiffs dismissed that action as unnecessary and duplicative of this Adversary Proceeding. (See Docket No. 49 in *Werth et al v. Heller, Ehrman, White & McAuliffe LLP*, Case No. CV-08-4799-CW.)

On June 8, 2009, the Plaintiffs in this Adversary Action stipulated to stay this action until October 5, 2009. (Docket No. 14.) The Court entered an Order thereon on June 25, 2009 (Docket No. 16.) The parties' stipulation provided that any party could seek to enlarge or reduce the stay period by noticed motion (Docket No. 14; Paragraph 2 on page 4), which the Plaintiffs seek to do by this Motion. Although the stay expired by its own terms before the scheduled October 20, 2009 hearing on this Motion (and before the responding parties are required to oppose the Motion), this Motion was filed 13 days before the end of the stay. Hence the Plaintiffs ask that the stay period be reduced to the extent necessary to allow the filing of this Motion.

## THE NEED FOR CLASS CERTIFICATION NOW

The Plaintiffs seek class certification now in order to facilitate the resolution of this case. While the stay has been in place, the parties to this Adversary Action have been pursuing settlement discussions. In addition to numerous telephone calls that have been made on the topic of settlement over the past few months, representatives and counsel for the Debtor, the Unsecured Creditors Committee and the Plaintiffs met in person at Debtor's counsel's office in San Francisco on August 24, 2009 for the express purpose of the Debtor explaining a settlement proposal, and will have met again with a mediator on September 24, 2009. As evidenced by their attendance at the meeting, all parties understood that the stipulated stay should not bar progress toward settlement.

After the meeting, the Debtor's counsel John Fox sent his August 27, 2009 letter (Exh. A hereto) memorializing in writing the settlement terms proposed by the Debtor. Upon reading that letter that the offer was expressly made subject to the condition that "…95% of all Biggers purported class members [must] agree to the settlement….," the Plaintiffs' counsel undertook to

communicate with as many potential class members as possible about the settlement proposal. (See Decl. Collins filed concurrently herewith, at ¶ 10.)

There are, however, over 500 potential class members. (See Decl. Collins filed concurrently herewith, at ¶ 11.) Plaintiffs' counsel lacks even basic contact information for the potential class members, and the Debtor has refused requests to provide the information. (See Decl. Collins filed concurrently herewith, at ¶¶ 12.) Thus Plaintiffs, their counsel, and the potential class members are greatly handicapped in even responding to the Debtor's settlement proposal since there is no realistic way to round up 95 percent or more of them to consent to any settlement—absent class certification, that is.

This is exactly the type of situation that cries out for class certification. If a class is certified and class representatives appointed, the class representatives can speak for the 500 or more former employees. They can negotiate for the class members, and if necessary instruct their lawyers to seek the Court's ruling on legal issues common to all of them. If there is a genuine settlement proposal that the class representatives deem acceptable, then the class members who favor any settlement will have the opportunity to accept it and those who don't will be able to opt out. This is the fairest procedure for everyone, and puts the potential class members on equal footing in negotiating with the Debtor for settlement.

## WARN ACT CLAIMS ARE
## ESPECIALLY APPROPRIATE FOR CLASS CERTIFICATION

Class treatment is appropriate, indeed compelling, because:

- WARN Act claims are especially appropriate for class certification;
- the proposed classes meet all of the requirements for class certification; and
- class certification will expeditiously and fairly resolves the claims of the hundreds of Debtor's former employees who haven't been paid wages owed to them.

Therefore Plaintiffs respectfully request certification for the classes stated herein.

Case: 09-03058   Doc# 19   Filed: 09/22/09   Entered: 09/22/09 15:35:02   Page 8 of 27
Memo of Points and Authorities in Support of Plaintiffs' Motion for Class Certification, Relief from Stipulated Stay (09-ap-03058)

The federal WARN Act provides a straightforward mandate that applies nationwide: before instituting a "plant closing" or "mass layoff," an employer must provide 60 days' written notice to its employees.  See 29 U.S.C. § 2102(a).  Debtor did not give 60 days' notice under the WARN Act to the employees it terminated.

The WARN Act provides a cause of action for any employee who suffers a covered employment loss without having received the statutorily-required notice. See 29 U.S.C. § 2104. Here, each member of the proposed classes has a WARN Act claim arising from Debtor's October 2008 mass layoff.

The WARN Act is designed to simplify the claims of large groups of employees:

> "In short, WARN imposes a statutory duty on businesses to notify workers of impending large-scale job losses and allows for limited damages designed to penalize the wrongdoing employer, deter future violations, and facilitate simplified damages proceedings."  (*Hollowell v. Orleans Reg'l Hosp. LLC,* 217 F.3d 379, 382 [5th Cir. La. 2000]; internal quotes omitted.)

The statutory language of the WARN Act itself expressly emphasizes the appropriateness of <u>class-based proceedings</u> to obtain the statutory relief.  The Act states: "A person seeking to enforce such liability ... may sue either for such person *or for other persons similarly situated, or both*, in any district court of the United States …."  29 U.S.C. § 2104(a)(5); italics added.  Thus, the WARN Act expressly recognizes the Plaintiffs' right to obtain relief not only for themselves, but for other similarly situated employees of Debtor.

Not surprisingly, courts have routinely held that the WARN Act is "particularly amenable to class litigation." *Finnan v. L.F. Rothschild & Co.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989); *see also Grimmer v. Lord, Day & Lord*, 937 F. Supp. 255 (S.D.N.Y. 1996) ("[T]he WARN Act provisions lend themselves to class action because they provide for limited recovery."); *New Orleans Clerks and Checkers Union Local 1497 v. Ryan-Walsh, Inc.*, 1994 U.S. Dist. LEXIS 2403 (E.D. La. 1994) ("the instant proceeding, a WARN action, falls squarely within the criteria for sanctioning a class").

Case: 09-03058   Doc #19   Filed: 09/22/09   Entered: 09/22/09 15:37:02   Page 9 of 27

Violations of the WARN Act have given rise to numerous class action cases, including cases in this district. *See, e.g., Quintero v. Mulberry Thai Silk, Inc.*, 2008 U.S. Dist. LEXIS 84976 (N.D. Cal. 2008); *Jurcev v. Central Community Hospital*, 7 F.3d 618 (7th Cir. 1993); *Jones v. Kayser-Roth Hosiery*, 748 F. Supp. 1276 (E.D. Tenn. 1990); *Bledsoe v. Emery Worldwide Airlines*, 258 F. Supp. 2d 780 (S.D. Ohio 2003); *Cashman v. Dolce International/Hartford, Inc.*, 225 F.R.D. 73 (D. Conn. 2004); *Cruz v. Robert Abbey, Inc.*, 778 F. Supp. 605 (E.D.N.Y. 1991); and *Reyes v. Greater Texas Finishing Corp.*, 19 F. Supp. 2d 709 (W.D. Tex. 1998).

WARN classes are routinely certified because the issues in dispute are common to most or all of the proposed class members. Usually in these cases, the employer will assert the two main statutory defenses: *i.e.,* that it is excused from providing WARN notice by "unforeseeable business circumstances" or because it was a "faltering company." 29 U.S.C. 2102(b)(1). These defenses are issues that are common to *all* claimants. These issues are highly suitable for resolution on a class-wide basis, rather than in more than 500 separate proceedings.

## THE PROPOSED CLASSES

By this motion, Plaintiffs seek certification of the following classes:

WARN Class: All employees who worked at or reported to one of Defendants' Facilities and were terminated without cause in the 30 days starting October 10, 2008, or were terminated without cause as the reasonable foreseeable consequence of the mass layoff or plant closing ordered by Defendants on or about October 10, 2008, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5).

California WARN Class: All employees who worked at or reported to one of Defendants' qualifying facilities in California and who were subject to a mass layoff, relocation, or termination ordered by Defendants on or after October 10, 2008.

California Vacation Class: All former employees of Defendants in the State of California whose employment with Defendants ended on or after October 3, 2008, through the trial of this case, and who had accrued but unused vacation or sabbatical at the time of termination, or who were owed severance pay.

Memo. of Points and Authorities in support of Plaintiffs' Motion for Class Certification, Relief from Stipulated Stay (09-ap-03058)

Washington Vacation Class:   All former employees of Defendants in the State of Washington whose employment with Defendants ended on or after October 3, 2008, through the trial of this case, and who had accrued but unused vacation or sabbatical at the time of termination, or who were owed severance pay.

New York Vacation Class:   All former employees of Defendants in the State of New York whose employment with Defendants ended on or after October 3, 2008, through the trial of this case, and who had accrued but unused vacation or sabbatical at the time of termination, or were owed severance pay.

District of Columbia Vacation Class:   All former employees of Defendants in the District of Columbia whose employment with Defendants ended on or after October 3, 2008, through the trial of this case, and who had accrued but unused vacation or sabbatical at the time of termination, or were owed severance pay.

## A CLASS ACTION ADVERSARY PROCEEDING IS PREFERABLE TO THE BANKRUPTCY CLAIMS PROCEDURE

Class adversary proceedings may be commenced in a bankruptcy case provided that the requirements of the various subdivisions of Fed. R. Civ. P. 23 are satisfied.  It is proper to assert WARN Act claims in an adversary proceeding.  (*Johnson v. First NLC Fin. Servs., LLC (In re First NLC Fin. Servs., LLC),* 2008 Bankr. LEXIS 2166 [Bankr. S.D. Fla. Aug. 11, 2008]; "…handling of the WARN Act claims in an adversary proceeding is appropriate and preferable to the claims procedure.")

The claims are properly the subject of class certification.  The Ninth Circuit has held that Fed. R. Civ. P. 23 may apply throughout a bankruptcy case at the bankruptcy judge's discretion. *Birting Fisheries v. Lane*, 92 F.3d 939, 939 (9th Cir. 1996) (citing *In re American Reserve*, 840 F.2d 487 (7th Cir. 1988), which held that a bankruptcy judge may "incorporate Fed. R. Civ. P. 23 via Bankruptcy Rule 7023").  Federal Rule of Bankruptcy Procedure 9014 gives the court discretion to apply Rule 7023 to a contested matter in bankruptcy.  In *American Reserve*, Judge Easterbrook instructed that the class action device is as important inside bankruptcy as outside it. *American Reserve,* 840 F.2d at 491-492.

The expense and time that each claimant would need to individually spend in order to pursue his or her individual claim would be substantial and even burdensome.  Many of Debtor's

former employees may lack the ability to conduct such investigation or legal research, or may lack the resources to retain counsel because their individual claims are relatively small. For many of the former employees, they will obtain their deserved payments by means of a class action or not at all. The members of the proposed classes here would be severely prejudiced if the Plaintiffs are denied the right to assert the classes' claims in this bankruptcy proceeding. Such a result would be counter to the purpose of the Bankruptcy Code. As the Eleventh Circuit has reasoned:

> "Bankruptcy also seeks to achieve equitable distribution of the estate. Persons holding small claims, who absent class procedures might not prosecute them, are no less creditors under the Code than someone with a large, easily filed claim. Applying Rule 23 to filing procedures will bring all claims forward, as contemplated by the Bankruptcy Code." (*In re Charter Co.,* 876 F.2d 866, 871 [11th Cir. Fla. 1989].)

On the other hand, neither the Debtor nor the other creditors would be seriously prejudiced by class certification. First, this motion is timely. The Plaintiffs notified the Debtor in April 2009 that they intended to seek certification. (Decl. Collins, ¶ 14.) The Debtor's counsel asked Plaintiffs to stay the litigation while the Debtor litigated issues against Bank of America, which were of common concern to the Plaintiffs and the Debtor. The Debtor's counsel assured Plaintiffs that they would not be prejudiced by failing to seek class certification during the stay period, because the Debtor would stipulate to class certification at least for a settlement class. (Decl. Collins, ¶ 14.) Accordingly, the Plaintiffs entered into a stipulation for a stay of this action, which was approved by the Court. (Docket No. 14.) In recent weeks, the Plaintiffs' counsel has come to believe that the Debtor would refuse to stipulate to class certification and instead would instead try to undercut the class by "picking off" some of the Plaintiffs with individual settlement offers. (Decl. Collins, ¶ 14.) This motion necessarily ensues, so that the proposed class (and subclasses) may negotiate as a group.

The class claims do not inject much uncertainty into bankruptcy proceedings. Because the class members are all former employees of Debtor, the Debtor has had sufficient information to identify them and to quantify their claims using information from its employment records. In fact, the Debtor's counsel already has prepared an Excel spreadsheet with detailed information about each individual employee's priority and non-priority claims, accrued but unpaid wages, waiting time wages, WARN Act claim, *etc*. (Decl. Collins, ¶ 15.)

The proposed class members' claims are important enough to be assigned a fourth priority in bankruptcy, ahead of general unsecured creditors. 11 U.S.C. § 507(a)(4). The Plaintiffs urge the Court to allow them to assert these claims on behalf of the entire class of affected employees. The Third Circuit Court of Appeals stated the strong judicial preference for class certification succinctly: "The interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action." (See *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir.), *cert. denied*, 474 U.S. 946, 106 S. Ct. 342, 88 L. Ed. 2d 290, 106 S. Ct. 343 (1985).)

### THE PROPOSED CLASSES SATISFY RULE 23

A class may be certified under Fed. R. Civ. P. 23 (as applied in bankruptcy per Federal Rule of Bankruptcy Procedure 7023) if it satisfies (A) each of the four prerequisites set forth in Rule 23(a); and (B) at least one of the subparts of Rule 23(b). As shown below, the proposed classes pass this test and deserve to be certified.

A. The Proposed Classes Satisfy Each of the Four Prerequisites in Rule 23(a)

Fed. R. Civ. P. 23(a) provides as follows:

> **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Memo of Points and Authorities in Support of Plaintiffs' Motion for Class Certification, Relief from Stipulated Stay (09-ap-03058)

## 1. The Numerosity Requirement Is Satisfied

Fed. R. Civ. P. 23(a)(1) requires that the class sought to be certified be "so numerous that joinder of all members is impracticable." This prerequisite, however, does not require that joinder be impossible. *Coggin v. Sears, Roebuck and Company*, 155 B.R. 934, 937 (E.D.N.C.1993); *see also* 1 NEWBERG ON CLASS ACTIONS, § 3:4 at 230 (4th ed. 2002) ("[I]t is important to remember that "[i]mpracticable does not mean impossible.")

No specific number is needed to maintain a class action. *Cypress v. Newport News General & Nonsectarian Hospital Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967). Rather, an "application of the rule is to be considered in light of the particular circumstances of the case." *Id.* at 653. Classes consisting of forty (40) or more persons "should have a reasonable chance of success on the basis of number alone." 1 NEWBERG, supra, § 3:5 at 248.

More than 500 persons satisfy the definition of one or more of the proposed classes, which include many of the hundreds of employees around the country terminated by Debtor upon its dissolution. (Decl. Blum, ¶ 5.) This is adequate to satisfy the numerosity requirement. It would be impracticable for 500 separate claimants, who might be represented by 500 separate lawyers, to join together to litigate the same small handful of issues with the Debtor. It would be far more practicable to certify a class that can litigate these issues once for all.

Further, these class members are readily ascertainable. The proposed classes consist of Debtor's former employees who worked at specific locations within a definite time period and who were all terminated around the same time. Thus, the proposed class definitions are based on an objective determination that can be identified through Debtor's employment records. Debtor no doubt has in its possession a current or last known address and/or telephone number for each member of the proposed classes.

## 2. Questions of Law and Fact Are Common to All Class Members

The second prerequisite of class certification is that "there be questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[C]lass relief is peculiarly appropriate when the issues involved are common to the class as a whole and they turn on questions of law applicable in the same manner to each member of the class. For in such cases, the class-action

Memo of Points and Authorities in support of Plaintiffs' Motion for Class Certification, Relief from Stipulated Stay (09-ap-03058)

device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *General Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982) (internal citations and internal quotes omitted).

Here, Plaintiffs claim that they and other class members were terminated as part of a common plan stemming from the Debtor's decision to close its offices without providing 60 days' advance written notice. Plaintiffs and other class members all seek payments of 60 days' worth of wages and fringe benefits. Common questions of law and fact exist for all members of the proposed Federal WARN Class and California WARN Class, including whether:

a.      Debtor was a covered employer under the Federal WARN Act and the California WARN Act;

b.      All class members were "affected employees" protected under the Federal WARN Act and the California WARN Act;

c.      All class members' employment locations were covered facilities and/or covered establishments under the Federal WARN Act and the California WARN Act, respectively;

d.      Debtor ordered a "mass layoff," "plant closing" and/or a "termination" (as these terms are defined in the Federal and California WARN Acts);

e.      Debtor was required to give at least 60 days' advance written notice to class members under either or both the Federal WARN Act and the California WARN Act;

f.      Debtor was required to pay class members wages and benefits for the 60-day period following notice of their terminations; and

g.      Debtor is required to pay members of the California WARN Class waiting time wages pursuant to Cal. Labor Code Section 203.

Further, common questions of law and fact exist to all members of the proposed vacation classes, including whether:

a.      Debtor maintained a policy of providing vacation to vacation class members;

b.      Debtor's vacation policy required that Debtor pay vacation class members for their accrued but unused vacation time at the time of their termination; and

c.      Debtor failed to pay accrued but unused vacation time to vacation class members.

---

11

Case: 09-03058   Doc #: 19   Filed: 09/22/09   Entered: 09/22/09 16:55:32   Page 15 of 27

1    In short, the Federal and California WARN Act Classes share an almost identical set of

2    factual and legal issues; the vacation classes also share an almost identical set of factual and

3    legal issues.

4         Although there may be variations in the damages incurred by individual class members

5    such as due to variations in pay scales, the differences are minor and can be mathematically

6    calculated. As mentioned above, the Debtor already has given Plaintiffs' counsel a detailed

7    Excel spreadsheet showing the categories and amounts of compensation owed to the employees.

8    Resolution of the compensation issues can therefore be accomplished on a class-wide basis,

9    methodically and efficiently, with few (if any) disputes over individual claims.

10

11   3. The Claims of the Representatives Are Typical of the Claims of the Other Class
     Members

12        Fed. R. Civ. P. 23(a)(3) requires that "the claims or defenses of the representative parties

13   [be] typical of the claims or defenses of the class." The typicality requirement is met when the

14   class representative's claims arise from the same course of conduct and the same legal theories

15   that also give rise to the other class members' claims. *See Dura-Bilt Corp. v. Chase Manhattan*

16   *Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981).

17        Here, the Plaintiffs' claims are typical of those of the other members of the proposed

18   classes. The Plaintiffs allege that they and the other class members were Debtor's employees

19   and were terminated as a result of Debtor's mass layoffs that took place in the 30-day period

20   starting on October 10, 2008. The Plaintiffs allege that they and the other class members

21   received insufficient prior written notice or subsequent wages and benefits from Debtor pursuant

22   to the Federal and California WARN Acts. Further, the Plaintiffs allege that they and the other

23   class members did not receive payments for accrued but unused vacation time, as required by

24   state labor laws and their employment contracts. Based on these allegations, the Plaintiffs'

25   claims are the same as those of the other members of the proposed classes. Their claims arise

26   from the same course of conduct by Debtor and are based on the same legal theories.

27   4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Classes

28

Memo of Points and Authorities in support of Plaintiffs' Motion for Class Certification, Relief from Stipulated
Stay (09-ap-03058)

Fed. R. Civ. P. 23(a)(4) provides that a class action is maintainable only if "the representative parties will fairly and adequately protect the interests of the class." This element requires a two-step analysis. First, the court must determine whether the named class representatives have interests that "are free from conflicts of interest with the class they seek to represent." *Amchem Prods v. Windsor*, 521 U.S. 591, 625 (1997). Second, the court must find that the class would be represented by qualified counsel. *In re Agent Orange Prod. Liab. Litig.*, 800 F.2d 14, 18 (2nd Cir. 1986). Both elements are met. Plaintiffs are professional-level former employees who are well organized, can fairly and adequately protect the interests of the other class members, and have retained counsel experienced in complex business litigation, class action litigation, employment litigation and bankruptcy law. (Decl. Biggers, ¶¶ 6-8; Decl. Goodman, ¶¶ 3-8; Decl. Scarpa, ¶¶ 3-8; Decl. Norris, ¶¶ 1-8; and Decl. Blum, ¶¶ 7-12.)

As to the first element of Rule 23(a)(4), no divergence exists between the interests of the proposed Class Representatives and the interests of the other class members. The Class Representatives' personal claims are not antagonistic to the claims of other members of the proposed classes. (Decl. Biggers, ¶ 8; Decl. Goodman, ¶ 8; Decl. Scarpa, ¶ 8; Decl. Norris, ¶ 8.) The Plaintiffs in this action have conferred telephonically approximately bi-weekly with each other and their counsel to oversee the conduct of this litigation, have set up other meetings with their counsel and others when needed, and have helped found a hugely informative website specifically to share information with their fellow former employees. The website has had as many as 15,000 unique visitors in one day and on average sees 2,000 unique visitors per day. The website is called Heller Highwater and the website address is http://hellerdrone.wordpress.com/. The website includes updates on the pending bankruptcy action (often including copies of documents filed with the Court), job leads for the Debtor's former employees, a discussion forum for employees and others, legal information and news.

The plaintiffs' website has been followed by most legal trade publications in California and on a national basis in periodicals including the *ABA Journal* and *Business Week* as well as *The Wall Street Journal*. The website has also been the point of information for former employees and others when Debtor was unwilling to provide details as to the impending

13

Memo of Points and Authorities in support of Plaintiffs' Motion for Class Certification, Relief from Stipulated Stay (09-ap-03058)

Case: 09-03058  Doc #: 19  Filed: 09/22/09  Entered: 09/22/09 13:55:02  Page 6 of 27

dissolution, the job status of former employees, and how the bankruptcy process works. (Decl. Goodman at ¶¶ 9-10.)

The second element of Rule 23(a)(4) is met because Plaintiff's counsel are "qualified, experienced and generally able to conduct the proposed litigation." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968). Steven A. Blum, Craig M. Collins, Douglas L. Thorpe and Teresa A. Blasberg are experienced class action litigators with extensive trial experience. Mr. Blum and Mr. Collins each have been in practice for more than 20 years. Mr. Thorpe has been in practice more than 40 years and is a former managing partner of Perkins Coie, LLP, a large and highly regarded commercial law firm. Teresa A. Blasberg has been a bankruptcy law specialist for over 25 years, formerly with the New York law firms of Milbank, Tweed, Hadley & McCoy and later White & Case.

Mr. Blum, who until about 1995 coincidentally was an associate attorney at the Heller Ehrman law firm, has worked on and led large complex commercial and class litigation matters, including consumer and wage and hour class action litigation matters. Mr. Blum has been lead counsel on at least 15 certified class actions including the currently pending employment litigation case of *Jones v. International Coffee & Tea Corp*., on behalf of approximately 11,000 baristas (employees) claiming wages and waiting time wages. (Decl. Blum ¶ 7.) The United States District Court for the Northern District of California recently appointed Messrs. Blum, Collins and Thorpe as sole class counsel for a certified WARN Act class in the case of *Bergman, et al. v. Thelen, LLP,* Case No. CV-08-5322-EDL. That case also involves the dissolution of a large San Francisco law firm. Mr. Blum and the Blum Collins law firm were retained by a group of ex-Thelen associate lawyers and staff members. (Decl. Blum ¶ 8.)

Mr. Blum is a 1987 graduate of Yale Law School (J.D.) with a bachelor of arts from the University of California, Los Angeles, *summa cum laude.* (Decl. Blum, ¶ 9.)

Mr. Collins holds a 1983 *juris doctorate* from the Indiana University School of Law (*magna cum laude*) and a 1980 bachelor of arts degree (with honors) in Economics from the University of Chicago. Mr. Collins has first-chair trial experience in numerous large scale complex lawsuits in California and the Federal Courts. (Decl. Collins ¶¶ 7-9.)

14

Memo. of Points and Authorities in support of Plaintiffs' Motion for Class Certification, Relief from Stipulated Stay (09-ap-03058)

Mr. Thorpe has managed large and complex cases for corporate clients during his lengthy legal career, starting at O'Melveny & Myers and concluding at Perkins Coie LLP. Mr. Thorpe is a graduate of Southern Methodist University School of Law (first in class) and the University of Nebraska. (Decl. Blum at ¶ 10.) Ms. Blasberg, a corporate bankruptcy specialist, is a graduate of UCLA Law School and Stanford University. (Decl. Blum, ¶ 11.) Mr. Blum, Mr. Collins, Mr. Thorpe and Ms. Blasberg are all admitted to the State Bar of California.

Mr. Blum, Mr. Collins, Mr. Thorpe and Ms. Blasberg, as well as the Blum Collins law firm, have no known conflicts of interest with the Individual Plaintiffs or the members of the proposed classes or classes. (Decl. Blum at ¶ 12.)

The Blum Collins law firm represents over 70 Heller employees on an individual basis (Decl. Collins at ¶ 11). The Debtor's dissolution committee and the Unsecured Creditors' Committee have held substantial and substantive settlement discussions, including recent lengthy in-person meetings, with Blum Collins attorneys acting *de facto* on behalf of the class of former employees.

The employees deserve a strong and unitary voice – and will finally have one if class certification is approved. It will, moreover, increase the efficiency with which large and important claims may be resolved if the employees speak through their class representatives and class counsel.


### B. The Proposed Classes Meet the Requirements of Rule 23(b)(1) and (b)(3)

In addition to meeting the four prerequisites under Rule 23(a), a class must also meet one of the three requirements under Rule 23(b). Here, the proposed classes meet the requirements of Fed. R. Civ. P. 23(b)(1) and (3).

As provided in Fed. R. Civ. P. 23(b)(1), the risk of inconsistent or varying adjudications with respect to individual class members would arise if the class members were required to prosecute dozens or hundreds of separate actions. Some might seek to withdraw the reference and prosecute actions in either federal District Court or even their respective state courts. Some

15

would pursue claims in bankruptcy court.  In short, it would be a mess of possibly inconsistent adjudications.

As provided in Fed. R. Civ. P. 23(b)(3), class certification is appropriate because questions of law and fact common to the proposed classes predominate over any questions affecting only individual members of the classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  As for the proposed WARN Act classes, litigation of their claims in one forum is efficient because WARN Act litigation necessarily involves a single decision or set of decisions affecting the rights of hundreds of former employees.  As for the proposed vacation classes, common questions predominate because Debtor's alleged vacation policy applied to the respective vacation class members and Debtor is alleged uniformly to have failed to pay for all vacation class members' accrued but unused vacation time.  Class certification is superior because it will avoid the need for unduly duplicative litigation that might result in inconsistent judgments against the Debtor.

Other factors under Rule 23(b)(3) also favor class certification.  First, many of the class members' claims are relatively small, and those class members would likely be financially unable and not sufficiently motivated to pursue their claims individually.  Second, Plaintiffs are aware of only one other lawsuit involving claims between any other class member and the Debtor.  There is one case filed by a lone former employee who is representing himself *in pro per* in California state court.  (Decl. Blum at ¶ 4.)  Third, the desirability of adjudicating the claims in one forum is favored because the proposed class members' claims are based on the closure of Debtor's offices and the resulting termination of the proposed class members, and a class action will avoid multiple individual actions.  Lastly, there are minimal case management issues because the proposed class members can be easily identified, the potential liability of Debtor can be readily calculated, and the claims are centered on the Debtor's (not the class members') course of conduct.

## C. The Standard for Class Certification

In applying the criteria for class certification set forth in Fed. R. Civ. P. 23, all factual allegations made in the complaint are presumed to be true. *Shelter Realty Corp. v. Allied*

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Class Certification, Relief from Stipulated Stay (09-ap-03058)

*Maintenance Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978). While the court may "probe behind the pleadings" to determine whether there is a "sufficient evidentiary record from which to make the class determination," *Visa Check Litigation*, 192 F.R.D. 68, 79 (E.D.N.Y. 2000), it is not an occasion for examination of the merits of the case. *Baffa v. Donaldson, Luftkin & Jenrette Sec. Corp.* 222 F.3d 52, 58 (2d Cir. 2002) ("[a] motion for class certification is not an occasion for examination of the merits of the case"); *Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999) ("In deciding a certification motion, district courts must not consider or resolve the merits of the claim of the purported class.")

Rather, the proper focus is only whether the prerequisites of Rule 23 are met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirement of Rule 23 are met."); *In re Visa Check Master Money Antitrust Litig, v. Visa*, U.S. 280 F.3d 124, 133 (2d Cir. 2001) (quoting *Eisen*, 417 U.S. at 178).

Courts have consistently held that Rule 23 should be liberally construed in favor of class certification, *see e.g. Marisol A. v. Guiliani*, 126 F.3d 372, 377 (2d Cir. 1997) and *Garfinkel v. Memory Metals, Inc.*, 695 F. Supp. 1397, 1400 (D.Conn. 1988).

## THE STAY ON THIS ACTION SHOULD BE LIFTED.

The parties entered into a June 8, 2009 stipulation to stay this action until October 5, 2009, based on the Debtor's representations that it would prefer to litigate its claims against Bank of America without distraction from the employees. The Plaintiffs agreed to this temporary "stand down" in order to minimize expenses to the bankrupt estate and to litigate as efficiently as possible. Now, however, events have occurred that make it clear the employee class should be certified immediately so that the employees can capitalize on whatever momentum might currently exist toward settlement of their claims.

The Stipulation provides that "The Stay Period shall be subject to enlargement or reduction, upon noticed motion by any Party hereto, or any other party to the Biggers

Adversary." (Docket No. 14, ¶ 2.) This motion seeks to reduce the stay period so that it is now lifted and so that the Biggers class may be certified.

## CONCLUSION

For all the foregoing reasons, Plaintiffs request that this Court enter an Order:

(1) exercising its discretion under Federal Rule of Bankruptcy Procedure 7023 to apply Fed. R. Civ. P. 23 to this action;

(2) certifying that this action is maintainable as a class action under Fed. R. Civ. P. 23(a) and 23(b)(3);

(3) certifying the proposed classes;

(4) appointing Debora K. Biggers, Carl Goodman, Anna Scarpa, and Marjorie Norris as the class representatives of the class members;

(5) appointing Steven A. Blum, Craig M. Collins, Douglas L. Thorpe and Teresa A. Blasberg as class counsel; and

(6) lifting the stay on this adversary action to allow the filing of this Motion.


Dated:  September 21, 2009                     BLUM | COLLINS LLP
                                               Steven A. Blum
                                               Craig M. Collins
                                               Douglas L. Thorpe
                                               Teresa A. Blasberg


                                               By  /s/ Steven A. Blum

                                                Steven A. Blum
                                               Attorneys for Plaintiffs

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Class Certification, Relief from Stipulated Stay (09-ap-03058)

# INDEX OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| A | August 27, 2009 Settlement Proposal from Debtor's Counsel to Employees' Counsel |

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Class Certification, Relief from Stipulated
Stay (09-ap-03058)

# Exhibit A



John C. Fox
Manatt, Phelps & Phillips, LLP
Direct Dial: (650) 812-1354
E-mail: JFox@Manatt.com

August 27, 2009

Client-Matter: 40291-072

**VIA E-MAIL**

Craig M. Collins, Esq.
Steven A. Blum, Esq.
Blum Collins LLP
707 Wilshire Blvd., Suite 4880
Los Angeles, CA 90017

Re: *Debora K. Biggers, et al. v. Heller Ehrman, LLP, et al.*; **United States Bankruptcy Court, Northern District of California, Adv. Pro. Case No. 09-3058 (Bankruptcy Case No. 08-32514) ("Biggers Matter")**

Dear Craig and Steve:

This email is to confirm Heller's outstanding settlement offer of approximately $7,500,000, plus reasonable attorneys' fees TBD. As we discussed on Monday, Heller is willing to pay all vacation which is subject to "priority" (which we calculate to be $2,800,922.42: the total of column K of our claims chart minus any amounts above the $10,950 cap) to all *Biggers* putative class members (we hope) by 12/31/09, subject to a Plan of Reorganization being confirmed no later than December 20, 2009. In addition, Heller has offered to allow the remaining vacation claim amounts ($3,706,959.50) which are not subject to "priority" and to pay them as, and to the extent, all non-priority claims are paid at or following confirmation of a Plan of Reorganization.

In addition, Heller has offered to pay the putative class $1,000,000 in WARN damages to be distributed to the former employees in proportion to each one's WARN claim (about 15% of each former employee's total WARN damages, as calculated (favorably to the claimant) with no offset for having become re-employed before the end of the WARN period--where that happened). Heller would also pay these WARN settlement monies on a "priority" basis so long as the employee is under his or her $10,950 priority cap which the Bankruptcy Code imposes. Heller would pay any amounts above the $10,950 cap on a non-priority basis. Both the vacation and the WARN settlement offer are subject to any federal or state tax withholdings required by law. Heller will pay the employer's share separately, meaning this will not be deducted from the settlement offer amounts stated in this email. (Thus, total settlement costs to Heller are in excess of Heller's settlement offer to the Biggers class.)

1001 Page Mill Road, Building 2, Palo Alto, California 94304-1006  Telephone: 650.812.1300 Fax: 650.213.0260

Albany | Los Angeles | New York | Orange County | Palo Alto | Sacramento | San Francisco | Washington, D.C.



Heller would require all employees agreeing to the settlement to sign a Settlement Agreement and Release. Moreover, Heller would require 95% of all Biggers purported class members to agree to the settlement or else Heller would reserve the right to withdraw its settlement offer to all Biggers putative class members.

Finally, in recognition of your "substantial contribution" in helping to resolve the Biggers claims (other than the vacation claims which Heller agreed to pay before your law firm or any lawyers pressed such a claim ), Heller has also agreed to both support your attorneys' fees and costs application to the Court if they are reasonable and to pay your fees if the Court approves them (outside of the over $7.5M settlement pot referenced above). If we are unable to agree about the reasonableness of your fees, Heller would decide whether to oppose in whole or in part your fee application.

The claims spreadsheet that we have prepared and shared with you is marked "Attorneys' Eyes Only." However, you have asked whether you may share certain numbers with your clients for purposes of relaying to them our settlement offer. As we discussed on Monday, we agree that you may discuss with your clients the following numbers:

- Vacation priority total
- Vacation non-priority total
- WARN priority total
- WARN non-priority total
- Waiting time penalties total

We repeat in passing, too, as to "waiting time penalties" both that you must (a) reduce total "waiting time penalties" to account for the filing of the *Werth* lawsuit (which cuts off as the date of its filing the running of the daily waiting time penalty accruals) and (b) realize that "waiting time penalties," even if otherwise awarded (which we highly doubt), would fall into a preference below that of even unsecured creditor claims. Accordingly, we think there is scant chance "waiting time penalties" would ever be collected for all of these reasons.

In the event we are not able to reach an agreement on the terms of a settlement, then, as we explained to you on Monday, the Plan of Reorganization the Debtor intends to file will include a schedule which sets forth the amount the Debtor will pay to each former employee, identified by name and amount. As we further explained, each employee's payment will include the full amount of accrued vacation (as computed by reference to the Debtor's records), as well as an amount in satisfaction of all other claims. Amounts up to $10,950 per employee will be entitled to priority. Each employee will then have the option of accepting that payment (and releasing all claims), or not.


manatt | phelps | phillips

Craig M. Collins, Esq.
Steven A. Blum, Esq.
August 27, 2009
Page 3

Finally, it bears repeating that Heller's offer is necessarily conditional on the Bankruptcy Court's approval. Important to the Bankruptcy Court's approval would be the approval, as you know, of the Creditors' Committee Tom Willoughby represents. While Heller obviously does not have either the Court's or the Committee's express approval to confirm this offer of settlement, Heller believes it could obtain both approvals after doing the work needed to fully explain the settlement.

We expect that you will present this written settlement offer to your clients, as is required by California Business & Professions Code section 6103.5. You have informed us that you will do so on Saturday and that you will get back to us with a response early next week. We look forward to receiving your response. Please let us know if you have a different understanding regarding the above.

Very truly yours,

John C. Fox
Partner
Manatt, Phelps & Phillips, LLP

cc:    Jonathan P. Hayden, Esq. (Member, Heller Ehrman Dissolution Committee)

Paul W. Sugarman, Esq.   (Member, Heller Ehrman Dissolution Committee)

20219735.1